UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daniel John Lueth,

Civ. File No. 01-2251 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

City of Glencoe, Minnesota; City of Glencoe, Minnesota Police Department; Chief of Police Wes Olson in his official and individual capacities,

Defendants.

---

This case arises from Plaintiff Daniel John Lueth's claims against Defendants pursuant to 42 U.S.C. §§ 1983 and 1985 for violations of his constitutional rights.[1] Lueth also claims that Defendants violated the Minnesota Whistleblower Act, Minn. Stat. § 181.932, and that Defendants committed the state-law torts of intentional infliction of emotional distress and tortious interference with contract. This matter is before the Court on Defendants' Motion for Rule 12(b)(6) Dismissal or Alternatively Summary Judgment.[2] For

---

[1] Because the City of Glencoe, Minnesota, Police Department is not a legal entity subject to suit, the Court dismisses Lueth's claims against it without further consideration. See In Re Scott County Master Docket, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987); Maras v. City of Brainerd, 502 N.W.2d 69, 79 (Minn. Ct. App. 1993).

[2] Because Lueth has not had adequate time to develop the factual record in this matter, the Court will consider Defendants' Motion as one pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

FILED [illegible] 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the following reasons, the Court grants Defendants' Motion in part and denies it in part.

**BACKGROUND**

Lueth was hired as a permanent police officer for Defendant City of Glencoe ("the City") on November 17, 1997. In May 1998, Lueth was hired by Olson, Chief of the Glencoe police department and the owner of Glencoe Uniforms, as a part-time administrative and sales employee of Glencoe Uniforms. On November 4, 1998, Lueth's employment as a police officer for the City was terminated. Lueth grieved his termination through arbitration as required by the collective bargaining agreement that existed between the City and Law Enforcement Labor Services, Inc., Employee Union, Local No. 92 ("the Union").[3] In the fall of 1999, while awaiting the arbitrator's decision about his employment with the City, Lueth reported to the police secretary alleged illegal activity committed by Olson. The secretary, in turn, reported these activities to the Glencoe City Council.

On February 5, 2000, the arbitrator issued an Opinion and Award reinstating Lueth as a police officer. Later that month, Union representatives met with Olson to discuss back pay owed to Lueth and the date on which Lueth would to return to work. According to Lueth, Olson replied that he was not going to allow Lueth to return to active duty.

In any event, Lueth was placed on "home assignment" and later told that he would remain on this assignment until he qualified with his handgun. Despite repeated attempts,

---

[3] In April 2000, the Union was decertified, thereby eliminating the collective bargaining agreement.

Lueth was unable to qualify during any firearm qualification test administered by Olson. On June 15, 2000, however, Lueth avers that he went to the McLeod County Sheriff's Department to take a firearm test administered by the Sheriff. Although Lueth qualified at this session, Olson refused to acknowledge that this test met the City's qualification standards. On June 27, 2000, Lueth participated in another qualification test administered by Olson and failed. Accordingly, on July 11, 2000, Lueth's employment was again terminated by the City.

Lueth attempted to grieve his termination in accordance with the City's personnel policy, which provides that employees have the opportunity to appeal any actions that do not adhere to the terms and provisions of the policy. The City denied Lueth's request for grievance because it argued that determining the qualification standards for any position is an inherent managerial function not grievable under the policy and Lueth was an at-will employee. On November 9, 2000, Lueth commenced a state court action against the City to compel arbitration. The City filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the only mechanism for reviewing Lueth's termination was a writ of certiorari to the Minnesota Court of Appeals. In March 2001, the state district court denied the City's motion, finding that it had limited subject matter jurisdiction to determine whether Lueth was entitled to arbitrate his claims. The state district court then granted Lueth's motion, implicitly finding that there was an employment contract between Lueth and the City and that a Minnesota statute therefore required arbitration. <u>See</u> <u>Lueth v. City of Glencoe</u>, No. C0-00-

783, slip op. at 10-11 (Minn. Dist. Ct. 2001) ("Lueth I"). The City, however, refused to engage in arbitration and appealed. Lueth then filed suit on December 6, 2001, with this Court. In early February, the Minnesota Court of Appeals vacated that portion of the state district court's decision that compelled the City to arbitrate Lueth's claims. See Lueth v. City of Glencoe, 639 N.W.2d 613, 619 (Minn. Ct. App. 2002) ("Lueth II"). Lueth's subsequent application for review with the Minnesota Supreme Court was denied on April 16, 2002.

Defendants have now brought the instant Motion arguing that: (1) the Rooker-Feldman doctrine presents a bar to this Court's subject matter jurisdiction; (2) even if Rooker-Feldman does not apply, Lueth has failed to establish a viable constitutional claim against the City under § 1983 because he has not sufficiently alleged that a custom, practice, or policy violated his constitutional rights; (3) Lueth's § 1985 claim fails because he has not alleged that the supposed conspiracy against him was fueled by class-based, discriminatory animus; (4) Lueth's Whistleblower claim is barred by the statute of limitations and, in any event, fails because there is no causal connection between Lueth's termination and any report made by Lueth of illegal activity; (5) Lueth's claim for intentional infliction of emotion distress fails because there is no evidence of the requisite severe emotional stress needed to support such a claim, and Lueth's sole means of having his termination judicially reviewed was by seeking a writ of certiorari from the Minnesota Court of Appeals; and (6) Lueth's claim for tortious interference with contract fails because there was no employment contract,

and again, Lueth may only have his termination judicially reviewed by the Minnesota Court of Appeals.

## DISCUSSION

### A. Standard of Review under Rule 12(b)(1)

As the parties frame the case, the threshold issue is whether Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) divest the Court of subject matter jurisdiction. Although Defendants style their entire Motion as one for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), Defendants actually seek, though their Rooker-Feldman argument, to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). Where, as here, the motion challenges the factual truthfulness of the complaint, courts have the authority to look beyond the face of the complaint and consider materials outside of the pleadings. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). No presumptive truthfulness attaches to the plaintiff's factual allegations and the court may weigh the evidence to determine if it has the power to hear the case. Id. at 730. The existence of disputed material facts does not preclude the trial court from evaluating the merits of the jurisdictional challenge. Id.

**B. Rooker-Feldman**

The Rooker-Feldman doctrine prohibits federal courts, other than the Supreme Court, from hearing challenges to state court judgments. Lemonds v. St. Louis County, 222 F. 3d 488, 492 (8th Cir. 2000). The doctrine "forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions." Id. According to the Supreme Court, "claims . . . inextricably intertwined" with state court judgments are outside the scope of federal district court jurisdiction. Feldman, 460 U.S. at 483 n.16.

Clarifying the doctrine, the Eight Circuit has explained that it only applies "[w]hen the goal of the federal action is to nullify a state judgment." Canal Capital Corp. v. Valley Pride Pack, Inc. 169 F.3d 508, 513 (8th Cir. 1999); see Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1035 (8th Cir. 1999) (stating that a claim is inextricably intertwined with a state court judgment if it "succeeds only to the extent that the state court wrongly decided the issues before it") (citation omitted). It should be noted, however, that the doctrine applies to all decisions of state courts, not merely final judgments. In Re Goetzman, 91 F.3d 1173, 1178 (8th Cir. 1996); Charchenko v. City of Stillwater, 47 F.3d 981, 983 n.1 (8th Cir. 1995) (stating that "Rooker-Feldman is broader than claim and issue preclusion because it does not depend on a final judgment on the merits").

In this case, Defendants contend that all of Lueth's claims are precluded by the Rooker-Feldman doctrine because he could have raised his federal claims in the state court

proceeding. By failing to do so, Defendants argue that Lueth forfeited his right to obtain a review of the state court's decision. Additionally, Defendants claim that because Lueth's federal claims stem from the same set of facts as those supporting his claim in the state court proceeding, the federal claims are inextricably intertwined with a state court ruling.

Neither of these arguments is tenable, however. First, although it is beyond cavil that Lueth could have brought his federal claims against Defendants in state court, the relevant inquiry is whether he had a "reasonable opportunity to raise his federal claim in [the] state proceedings [at issue]." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 201 (4th Cir. 2000) (quoting Long v. Shorebank Dev. Corp., 182 F.3d 548, 558 (7th Cir. 1999)). In this case, "Lueth did not bring a cause of action against his employer. Rather, he filed a motion to compel arbitration . . . ." Lueth II, 639 N.W.2d at 617. In Minnesota, "[w]hen a party moves to compel arbitration, the court is limited to determining whether an arbitration agreement exists and, if so, whether the dispute falls within the scope of that agreement." Churchill Envtl. & Indus. Equity Partners v. Ernst & Young, 643 N.W.2d 333, 337 (Minn. Ct. App. 2002) (citing Local No. 1119, Am. Fed'n State, County, & Mun. Employees, AFL-CIO v. Mesabi Reg'l Med. Ctr., 463 N.W.2d 290, 296 (Minn. Ct. App. 1990)). Thus, even if Lueth had brought his federal claims in the state court proceedings at issue, those proceedings would not have adjudicated the federal claims. Accordingly, the Court finds that Lueth had no reasonable opportunity to raise his federal claims in the state court.

Second, the relief that Lueth requests in his federal action would not "effectively

reverse the state court decision or void its ruling." Bechtold v. City of Rosemont, 104 F.3d 1062, 1065 (8th Cir. 1997). The only decision made by the state court in this matter relates to the arbitrability of Lueth's grievances. To decide the claims that Lueth has filed against Defendants in this action, the Court need not consider, let alone reverse or disagree with, the state proceedings. Therefore, the Rooker-Feldman doctrine does not divest the Court of subject matter jurisdiction over Lueth's claims.

**C. Standard of Review under Rule 12(b)(6)**

Alternatively, Defendants seek to dismiss Lueth's claims pursuant to Rule 12(b)(6). When a defendant makes a 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court assumes that all facts alleged in the plaintiff's complaint are true. See Schmedding v. Tnemec Co., Inc., 187 F.3d 862, 864 (8th Cir. 1999). Furthermore, courts construe the allegations in the complaint and reasonable inferences arising from the complaint in the plaintiff's favor. Id. A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Schmedding, 187 F.3d at 864. Nevertheless, "[a]t a minimum . . . a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." Hanten v.

Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999) (quoting Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998)).

### D. Constitutional Claims

#### 1. 42 U.S.C. § 1983

Lueth's constitutional claims against Defendants are predicated on 42 U.S.C. § 1983, which provides in pertinent part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To make out a prima facie case under § 1983, a plaintiff must show that: (1) the alleged wrongful conduct was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of some right, privilege, or immunity secured by the Constitution or laws of the United States. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992).

There appears to be no debate that Defendants were acting under color of state law when they terminated Lueth. To satisfy the second prong of his prima facie case, Lueth alleges that the Defendants violated his First and Fourteenth Amendment rights to free speech, due process, and freedom of association. Defendants do not dispute that Lueth has stated a viable § 1983 claim against Olson. Rather, Defendants argue that Lueth has failed to state such a claim against the City.

Under § 1983, a municipality is only liable if a custom or policy caused the deprivation of a right protected by the constitution or federal law. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 663 (1978); Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler, 165 F.3d at 1204. A custom, on the other hand, may be established by showing that: (1) there was a continuing, widespread, persistent pattern of unconstitutional conduct; (2) deliberate indifference to or tacit authorization of such conduct by the city's policymaking officials after notice to the officials of the misconduct; and (3) the alleged injuries were caused by the city's custom or practice. Id.

Here, Defendants argue that there is no evidence, and no sufficiently articulated allegation that evidence exists, of a custom, practice, or policy that caused any constitutional injury to Lueth. Lueth alleges, however, that Defendants "developed, maintained or tolerated policies" that caused a deprivation of his constitutional rights. (Compl. ¶ 23.) Additionally, Lueth alleges that Defendants "developed, maintained or tolerated . . . customs" that caused a deprivation of his constitutional rights. (Id.) Construing the factual allegations in the Complaint liberally, the Court finds that Lueth may be able to prove some set of facts that would entitle him to relief. For instance, Lueth alleges that two of his co-workers were retaliated against, and one of them was eventually terminated, by Defendants for conduct

similar to Lueth's. (Id. ¶¶ 13-14.) Though spare, it is possible that Lueth can fill out this allegation and show that there were repeated incidents of unconstitutional conduct, that the City was aware of this conduct, and that the City tacitly endorsed such conduct. Accordingly, the Court denies Defendants Motion insofar as it seeks to dismiss Lueth's § 1983 claims against the City.

**2. 42 U.S.C. § 1985**

Lueth also alleges that Defendants engaged in a conspiracy to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985. To establish a conspiracy in violation of § 1985, Lueth must show that: (1) a civil conspiracy existed; (2) the purpose of this conspiracy was to deprive him of equal protection of the laws; (3) a conspirator acted in furtherance of the object of the conspiracy; and (4) he has sustained damages as a result of the conspiracy. Mettler, 165 F.3d at 1206. Courts have narrowly construed the second prong of this test to mean that plaintiffs must "show that the conspiracy is fueled by some 'class-based, invidiously discriminatory animus.'" Bell v. Fowler, 99 F.3d 262, 270 (8th Cir. 1996) (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993)).

In this case, Lueth has not alleged that the City or Olson acted with class-based, invidious discriminatory animus. Indeed, Lueth has not even alleged that he is a member of a protected class. Accordingly, Lueth has failed to state a claim against Defendants under § 1985.

### E. Whistleblower Claim

Lueth claims that Defendants violated the Minnesota Whistleblower Act, which prohibits an employer from discharging an employee who, in good faith, reports a violation or suspected violation of any federal or state law, or rule adopted pursuant to law, to an employer or to any governmental body or law enforcement official. Minn. Stat. § 181.932, subd. 1(a). Where direct evidence of unlawful discrimination is not present, as in this case, claims under the Act are evaluated using the burden-shifting approach of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). In other words, the employee has the initial burden to establish a prima facie case under the Act. If the employee makes out a prima facie case, then the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for its action, after which the employee must demonstrate that the employer's articulated reasons are pretexual. Cokley, 623 N.W.2d at 630 (citations omitted). To establish a prima facie case under the Whistleblower Act, Lueth must demonstrate that: (1) he engaged in statutorily protected activity; (2) Defendants took adverse employment action against him; and (3) there is a causal connection between the two events. Id.

Defendants first argue that Lueth's Whistleblower claim is barred by the statute of limitations. Minnesota courts have determined that claims under the Whistleblower Act are governed by Minnesota's two-year statute of limitations. See Larson v. New Richland Care Ctr., 538 N.W.2d 915, 920 (Minn. Ct. App. 1995); Minn. Stat. § 541.07(1). The limitations

period "begins to run when the discriminatory act occurs, not when the consequences of the act become painful." Barrott v. County of Ankoa, No. C5-96-2227, 1997 WL 206810, at *1 (Minn. Ct. App. April 29, 1997) (quoting Blitz v. Northwest Airlines, Inc., 363 N.W.2d 94, 96-97 (Minn. Ct. App. 1985)).

According to Defendants, Lueth's termination in July 2000 somehow relates back to his first termination on November 4, 1998. Based on this unsupported bit of chronological chicanery, Defendants claim that Lueth's Whistleblower claim should have been filed by November 4, 2000. Because Lueth's Complaint was not filed until December 6, 2001, they argue that Lueth's Whistleblower claim is barred. Lueth, however, is claiming that he was penalized for making a report in the fall of 1999. Defendants have presented no credible justification for their contention that Lueth's 1999 report was related in any way to his termination in 1998, and the Court can find no such justification on the face of the pleadings.

Defendants also argue that Lueth's Whistleblower claim is untimely because the Complaint alleges that, after filing his report in the fall of 1999, Lueth was "penalized and discriminated against regarding the terms, conditions, location and privileges of employment." (Compl. ¶ 28.) This language, Defendants contend, evidences that Lueth claims to have suffered from retaliatory acts immediately after his report about Olson.

This argument is specious. Although Lueth may be alleging that he suffered from retaliatory acts prior to his termination in July 2000, he was not reinstated as a police officer for the City until February 2000. He could not have suffered from any acts of retaliation

from Defendants before he was reinstated. Accordingly, Lueth's filing of his Complaint before February 2002 was timely.

Finally, Defendants argue that even if Lueth's Whistleblower claim is timely, he has not alleged that there is a causal connection between the filing of his report and Lueth's termination. Although Defendants concede that temporal proximity between an adverse employment action and statutorily-protected conduct may demonstrate a causal connection, they point out that nearly a year passed between Lueth's report about Olson and Lueth's termination. Relying on Evanoff v. Minneapolis Pub. Schs., Special Dist. #1, 2001 WL 950049, *1 (Minn. Ct. App. Aug. 21, 2001), Defendants argue that this interval is too long, as a matter of law, to support finding that a causal connection existed.

The Court again disagrees. The court in Evanoff stated that if an adverse action occurs more than a year after the report at issue, the adverse action is generally considered too remote to establish a causal connection. Id. at *1. Here, the termination occurred less than a year after Lueth's report. Although the timing of Lueth's termination alone may not be enough to survive a motion for summary judgment, it is sufficient to survive a motion to dismiss. Accordingly, the Court denies Defendants' Motion insofar as it seeks to dismiss Lueth's Whistleblower claim.

### F. Intentional Infliction of Emotional Distress

Lueth also alleges that Defendants intentionally inflicted emotional distress on him. To establish a claim for intentional infliction of emotional distress, Lueth must show: (1) that

the complained-of conduct was extreme and outrageous; (2) the conduct was intentional and reckless; (3) it caused Lueth emotional distress; and (4) the emotional distress was severe. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983). This tort only applies to cases involving particularly egregious facts. Id. at 439. The conduct at issue "must be extreme and outrageous, so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Haagenson v. Nat'l Farmers Union Prop. & Cas. Co., 277 N.W.2d 648, 652-53 n.3 (Minn. 1979) (citation omitted). Perhaps most importantly, the emotional distress must be "so severe that no reasonable man [or woman] could be expected to endure it." Hubbard, 330 N.W.2d at 439.

In this case, Lueth has merely claimed that he suffered stress as a result of Defendants' mistreatment of him. He has not alleged, however, that he suffered the sort of severe stress that is necessary to state a claim for intentional infliction of emotional distress nor has he articulated any set of facts which, if proven, could establish that he suffered from such stress. Accordingly, the Court dismisses Lueth's intentional infliction of emotional distress claim.

Even if Lueth had sufficiently plead a claim for intentional infliction of emotional distress, however, his claim against the City would have to be dismissed pursuant to Willis v. County of Sherburne, 555 N.W.2d 277, 282 (Minn. 1996) and Dietz v. Dodge County, 487 N.W.2d 237, 239 (Minn. 1992). These two cases establish that in Minnesota a public employee's sole means of contesting his or her termination is by a writ of certiorari to the

Minnesota Court of Appeals.[4] In the absence of a statute providing for a different process, the key to determining whether a plaintiff must file a writ of certiorari to contest his or her termination is "whether the claim implicates an executive body's decision to terminate" the employee. Lueth II, 639 N.W.2d at 617 (citing Willis, 555 N.W.2d at 282). In order for this Court to adjudicate Lueth's claim that the City intentionally inflicted emotional distress on him, it would have to analyze the reasonableness of the City's decision to terminate him. Such an analysis is reserved, in Minnesota, to the state Court of Appeals.

**G. Tortious Interference With Contract**

Finally, Lueth claims that Olson tortiously interfered with his employment relationship. In Minnesota, an at-will employee may maintain a tortious interference with contract claim against a third party who wrongfully causes the termination of the employee's job. Nordling v. Northern States Power Co., 478 N.W.2d 498, 505 (Minn. 1991). To succeed on his claim, Lueth must show that: (1) a contract existed; (2) Olson knew of this contract; (3) Olson intentionally procured the breach of the contract; (4) Olson's actions were without justification; and (5) Lueth has suffered damages. See Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994). It is important to note, however, that

[4] It is worth noting that neither Lueth's constitutional claims nor his Whistleblower claim is barred by the rule of Willis and Dietz. See Charchenko, 47 F.3d at 983 ("The deprivation of state court subject matter jurisdiction [by Dietz] in § 1983 suits does not affect the federal district court's original jurisdiction."); Manteuffel v. City of North St. Paul, 538 N.W.2d 727, 731 (Minn. Ct. App. 1995) (noting that the Whistleblower Act "explicitly [provides] for a cause of action in the district court" and is therefore not subject to the Dietz rule).

> [A] company officer, agent or employee is privileged to interfere with or cause a breach of another employee's employment contract with the company if that person acts in good faith, whether competently or not, believing that his actions are in furtherance of the company's business. This privilege may be lost, however, if the defendant's actions are predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility or a deliberate intent to harm the plaintiff employee.

Nordling, 478 N.W. 2d at 507.

Defendants argue that because there was no collective bargaining agreement in place at the time of Lueth's second termination, there was no contract with which Olson could interfere. In light of Nordling, however, it is clear that an at-will employee can maintain a claim of tortious interference with contract because "at-will employment subsists at the will of the employer and employee, not at the will of a third party meddler who wrongfully interferes with the contractual relations of others." Id. at 505.

Defendants also argue that the rule of Willis and Dietz prevents the Court from hearing Lueth's tortious interference with contract claim. The Court disagrees. Nordling's mechanism for holding individuals liable for the bad-faith or malicious termination of an employee in certain circumstances does not encroach upon the protections afforded to the discretionary acts of executive bodies by Willis and Dietz. Because the rule of Nordling does not make the employer, in this case the City, liable, the Court finds that the rule of Willis and Dietz is not applicable to Lueth's tortious interference with contract claim. See Pierce v. Honan, 2001 WL 682885, at *3 (Minn. Ct. App. June 19, 2001) (finding that an employee's tortious interference with contract claim could be brought in the state district court); see also

Willis, 555 N.W.2d at 283 (allowing an employee's common-law defamation claim to be brought in the state district court). The Court therefore denies Defendants' Motion insofar as it seeks to dismiss Lueth's tortious interference with contract claim.

**CONCLUSION**

For the foregoing reasons, and upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Rule 12(b)(6) Dismissal or Alternatively Summary Judgment (Clerk Doc. No. 6) is **GRANTED in part and DENIED in part** as follows:

1. Lueth's claims against Defendant City of Glencoe, Minnesota Police Department are **DISMISSED as moot**;
2. Count I of the Complaint is **DISMISSED with prejudice** insofar as it raises a claim against Defendants pursuant to 42 U.S.C. § 1985;
3. Count IV of the Complaint, alleging intentional infliction of emotional distress, is **DISMISSED with prejudice**; and
4. Lueth may proceed with the balance of his claims.

Dated: September 11, 2002

Paul A. Magnuson
United States District Court Judge