UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Daniel John Leuth,

Plaintiff,

v.

ORDER

City of Glencoe, Minnesota;
City of Glencoe, Minnesota
Police Department; and Chief
of Police Wes Olson in his
official and individual
capacities,

Defendants.

Civ No. 01-2251 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 16th day of October, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Plaintiff's Motion to Amend his Complaint, so as to add parties. The Defendants oppose the Motion on substantive grounds. A Hearing on the Motion was conducted on September 26, 2002, at which time, the Plaintiff appeared by James M. Ventura and Robert M. Gardner, Esqs.; the Defendant City of Glencoe, Minnesota (the "City"), and the Defendant City of Glencoe, Minnesota Police Department (the "GPD"), appeared by Jon K. Iverson, Esq.; and the Defendant Chief

OCT 16 2002

(30)

JH.

of Police Wes Olson ("Olson") appeared by Ryan J. Trucke, Esq. For reasons which follow, we grant, in part, the Motion to Amend.

## II. Factual and Procedural History

The Plaintiff was employed as a permanent police officer with the GPD from November 17, 1997, until November 4, 1998, at which time his employment was terminated. He grieved that termination through arbitration, as was then required by the collective bargaining agreement between the City and the police officers' union. In the Fall of 1999, while awaiting the decision of the Arbitrator, the Plaintiff reported to Pat Johnson ("Johnson"), the police secretary, that Olson was committing illegal activity in connection with Olson's business as a retailer of uniform supplies, inclusive of police uniforms. Johnson forwarded this report to the City Council. On February 5, 2002, the Arbitrator issued an Opinion and Award, which directed that the Plaintiff be reinstated as a police officer with the GPD. Later that month, union representatives met with Olson to discuss the back pay owed to the Plaintiff, and the date on which the Plaintiff would return to work. The Plaintiff claims that, during this meeting, Olson told the union representatives that, in spite of the Arbitration Award, he was not going to allow the Plaintiff to return to work.

In fact, the Plaintiff was not allowed to return to work to fulfil his previous duties but, instead, he was placed on "home

assignment," and was told that he would remain on that assignment until he requalified with his firearm. The Plaintiff attempted, but repeatedly failed, to requalify during several firearm tests that Olson administered. Then, Olson arranged for a handgun test to be administered by the McLeod County Sheriff's Department, on June 15, 2000, during which, the Plaintiff claims, he requalified. Olson, however, refused to acknowledge that the McLeod County test met the GPD's standards, and he required the Plaintiff to take another test administered by Olson, which the Plaintiff, once again, failed. The City Council then voted to terminate the Plaintiff's employment.

The Plaintiff attempted to grieve his second termination, in accordance with the City's personnel policy, but the City denied his request for a grievance, saying that a determination of the qualification standards was a managerial function, and that the Plaintiff was an at-will employee and, for those reasons, the decision to terminate him was not subject to grievance under the City's policy. Subsequent to this denial, on November 9, 2000, the Plaintiff commenced a State Court action against the City to compel arbitration. In March of 2001, the State Court granted the Plaintiff's Motion, and found that the Plaintiff had an employment contract with the City, and that, as a consequence, arbitration was necessary. The City appealed that decision, and in February of

2002, the Minnesota Court of Appeals vacated the lower Court's decision to compel the City to arbitration, and further review by the Minnesota Supreme Court was denied.

During the pendency of the State Court litigation, the Plaintiff also filed suit in Federal Court, on December 6, 2001. Originally, the Plaintiff brought claims against the City, the CPD, and Olson, and alleged violations of Title 42 U.S.C. §§1983 and 1985, the Minnesota Whisteblower Act, Minnesota Statutes Section 181.932, and State law tort claims for an intentional infliction of emotion distress, and for a tortious interference with contract. The Defendants brought a Motion to Dismiss, or alternatively for Summary Judgment, and argued that the Rooker-Feldman Doctrine barred the Court's jurisdiction over the subject matter of the Plaintiff's causes of action, and that, accordingly, the Plaintiff's Complaint failed to state a viable claim.

Specifically, the Defendants argued that the Plaintiff had failed to allege a proper Section 1983 claim, because he did not sufficiently alleged a custom, practice or policy; that his Section 1985 claim failed because he did not allege that the alleged conspiracy against him was fueled by class-based discriminatory animus; that his Whistleblower claim did not allege a causal connection between any report made by the Plaintiff, and his termination; that the Plaintiff's intentional infliction claim failed because he

pled no showing of severe emotional distress pleaded; and that his claim for tortious interference failed because there was no employment contract. The Defendants also urged that the Plaintiff's Whistleblower claim was barred by the applicable Statute of Limitations. On September 11 ,2002, the District Court, the Honorable Paul A. Magnuson presiding, denied the Defendants' Motion to Dismiss the Section 1983 claim, the Whistleblower claim, and the tortious interference claim, but granted the Defendants' Motion to Dismiss the Section 1985 claim, and the claimed intentional infliction of emotional distress. In addition, the Court dismissed the GPD from the action, noting that it was "not a legal entity subject to suit."

In this Motion, which was brought prior to the issuance of the District Court's Order, which moots some of the proposed claims, the Plaintiff seeks to amend his Complaint in order to add, as Defendants, in their official and individual capacities, Mark Larson ("Larson"), who, at all times relevant, was the City Administrator; and members of the City Counsel, including, Lori Adamietz, Glenn Hohland, Charles Shamla, George Scheidt, and Randy Wilson (the "City Council"). In his proposed Amended Complaint, the Plaintiff also seeks to add claims for asserted violations of Title 42 U.S.C. §§1983, and 1985, against the proposed to be added parties, as well as a claim of defamation against the City and

Olson. In addition, the Plaintiff seeks to amend his Complaint so as to dismiss, without prejudice, the GPD, and his claim of an intentional infliction of emotional distress.

III. Discussion

A. Standard of Review. The Plaintiff argues that amendment of his Complaint is allowed under Rule 15(a), Federal Rules of Civil Procedure, which provides, in pertinent part, as follows:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reasons -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

B. Legal Analysis. In support of his Motion to Amend, the Plaintiff asserts that an allowance of the amendment would cause the Defendant no prejudice, because "this case is in its infancy and initial discovery is just commencing," and therefore, "all parties will have ample time to conduct discovery and/or defend

against Plaintiff's claims." Plaintiff's Memorandum in Support of Motion to Amend Complaint and Join Parties. Moreover, the Plaintiff's Motion comports with the Pretrial Schedule, which set the deadline for Motions to Amend the Pleadings at October 15, 2002. As the Plaintiff's Motion is timely, he was not required to first seek leave of the Court to file this Motion.

In response to this Motion, the Defendants do not claim any prejudice if the proposed amendments are allowed, but rather, they assert that the Plaintiff's proposed amendments should be denied as futile. The Plaintiff proposed several amendments to his initial Complaint. As noted, the Plaintiff seeks to add, as Defendants, Larson and the City Council members -- both in their official, and individual, capacities -- by incorporating them into his first Count, which alleges violations of Title 42 U.S.C. §§1983 and 1985. The Plaintiff also proposes to add a claim for defamation against Olson, and the City, and to dismiss, without prejudice, the GPD from the action, as well as his claim of an intentional infliction of emotional distress. For reasons we later detail, the Defendants object to each of these proposed amendments.

1. The Motion to Join Larson and the City Council Members. In Count One of the Plaintiff's proposed Amended Complaint, he alleges violations of Sections 1983, and 1985, against Larson, the City Council members, Olson, and the City. Originally, the Plain-

tiff's Section 1983, and 1985 claims, were only asserted against Olson, and the City, in Count One of his Complaint. We address each statutory claim separately.

a. Title 42 U.S.C. §1983. The City objects to the inclusion of the City Council members in Count One, and argues that the Council Members are entitled to absolute legislative immunity for their actions. In addition the City opposes the addition of Larson in Count One, and contends that Larson does not vote on employment issues and, therefore, the Amended Complaint fails to state a claim against him, as a matter of law. In his Motion papers, Olson declined to take a position with respect to this aspect of the Plaintiff's Amended Complaint but, at the Hearing on the Motion, counsel for Olson argued that the Section 1983 claim against him had been dismissed by the District Court. The City also contends that the Section 1983 claim against it was dismissed at the same time.

i. The City Council Members. Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan v. Scott-Harris, supra at 54. On the other hand, actions taken in an executive capacity, only provide the actors

with qualified immunity. See O'Brien v. City of Greers Ferry, 873 F.2d 1115, 1119 (8th Cir. 1989)(explaining that "a legislative act is a formulation of policy governing future conduct for all or a class of the citizenry"). In Bogan, the Court found that the defendant city's passage of an ordinance, which had the effect of eliminating the plaintiff's position, was legislative, finding that the act of voting for the ordinance bore all the hallmarks of traditional legislation, and reflected a discretionary, policymaking decision, which implicated the budgetary priorities of the city, and the services the city provided to its constituents. See, Bogan v. Scott-Harris, supra at 55.

In O'Brien, however, our Court of Appeals considered whether the defendant city council members were entitled to absolute immunity under Section 1983 for their refusal to appropriate funds for the defense of a fellow council member, allegedly because of the council member's gender, and because of her exercise of her First Amendment rights. See O'Brien v. City of Greers Ferry, supra at 1119-20. The council members argued that they were shielded by legislative immunity, but the Court disagreed, and held that the council members had only a qualified immunity for those acts done in an executive capacity. Id. There, the Court noted that the challenged actions occurred during a special meeting, which had been conducted for the sole purpose of determining whether to

appropriate money to defend the plaintiff, and that, under those circumstances, the council was acting executively, and not legislatively.

Here, the City Council's vote to remove the Plaintiff from his position on the GPD was not an act designed to formulate policy governing future conduct for all, or for a class of the citizenry, but rather, was a specifically tailored action designed to apply only to the Plaintiff. The mere fact that the final vote to terminate the Plaintiff was cast by a legislative body did not, standing alone, immunize that body's decision, or else the distinction, between legislative and executive action, would be rendered meaningless. In other words, while a legislative act is an action necessarily taken by a legislative body, an action taken by a legislative body, is not necessarily a legislative act. Here, the Council members offer no showing that an Ordinance was passed in effecting the Plaintiff's termination, or that any other prototypical legislative action was taken. While the line that separates a legislative act from an executive one can be narrow, our Court of Appeals has provided clear direction. If the act of refusing to appropriate funds, from the public fisc, as was the case in O'Brien, for the defense of a fellow council member is not legislative action, then, *a fortiori*, so is not the act of terminating the employment of a single city employee. In the absence of

a classic, traditional legislative act, the City Council has only qualified executive immunity, and not the absolute immunity that arises from legislation. Therefore, we grant the Plaintiff's Motion to Amend Count One of his Complaint so as to name, as Defendants, the City Council members.

ii. Larson. The Defendants assert that Larson, who was the City Administrator at the relevant times, did not vote to terminate the Plaintiff's employment, and that he lacked the authority to terminate the Plaintiff unilaterally. The Plaintiff argues that Larson brought the complaints against him to the City Council's attention, and attended the Council meetings. Although, by every appearance, the Plaintiff is suggesting that Larson conspired with the City Council members to violate his constitutionally protected rights, he does not allege that in his proposed Amended Complaint. Moreover, when pressed, counsel for the Plaintiff failed to point to a single act, taken by Larson, as pled in the proposed Amended Complaint, that violated a constitutionally protected right of the Plaintiff. On this Record, we find no act by Larson that subjects him to liability and, therefore, the Motion to Amend the Complaint in order to add Larson as a party, is denied.

iii. Olson and the City. Olson objects to his inclusion in Count One, and argues that the Section 1983 claim

against him was dismissed by the District Court's Order of September 11, 2002. To support this assertion, Olson relies on a single sentence of that Order, in which the Court stated that "the Court denies the Defendants' Motion insofar as it seeks to dismiss Lueth's §1983 claims against the City." Leuth v. City of Glencoe, Civ. No. 01-2251, at 11. However, reading the Order in its entirety, also discloses the Court's statement that the "Defendants do not dispute that Leuth has stated a viable §1983 claim against Olson." Id. at 9. As such, we find nothing in the District Court's Order which, read objectively, would suggest that the Section 1983 claim against Olson was dismissed. Thus, to the extent that Olson objects to his inclusion in Count One of the Amended Complaint, we find this objection unavailing. Alternatively, we find that Olson was originally named in Count One of the Plaintiff's initial Complaint and, accordingly, no further amendment is required as to him. If Olson seriously believes that the Section 1983 claim was dismissed against him, his relief would be in the hands of the District Court which considered his earlier attempt to dismiss that Count.

The District Court's Order was clear that the Section 1983 claim against the City was not dismissed and, therefore, we grant the Plaintiff's Motion to Amend the Complaint insofar as he seeks to allege a Section 1983 claim, in Count Two of the Amended

Complaint, where he alleges "Civil Rights Violations," but which, read in context, merely repeats the previous Section 1983 claim against the City. Therefore, the Plaintiff's Motion to Amend the Complaint to add a Count Two, so as to assert Civil Rights Violations against the City Council of Glencoe, is granted.

b. Title 42 U.S.C. §1985. In his Original Complaint, the Plaintiff alleged that the City, and Olson, engaged in a conspiracy to deprive him of his constitutional rights in violation of Title 42 U.S.C. §1985. In his proposed Amended Complaint, the Plaintiff seeks to include the City Council members, and Larson, in this alleged conspiracy. As the District Court observed, in dismissing the Plaintiff's Section 1985 claims against Olson, and the City, "[t]o establish a conspiracy in violation of §1985, the Plaintiff must show that: (1) a civil conspiracy existed; (2) the purpose of this conspiracy was to deprive him of equal protection of the laws; (3) a conspirator acted in furtherance of the object of the conspiracy; and (4) he has sustained damages as a result of the conspiracy." Leuth v. City of Glencoe, Civ. No. 01-2251, at 11, citing Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). "Courts have narrowly construed the second prong of this test to mean that plaintiffs must 'show that the conspiracy is fueled by some "class-based, invidiously discriminatory animus."'" Id. quoting Bell v. Fowler, 99 F.3d 262, 270 (8th Cir. 1996), quoting in

turn, Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993). The District Court held that, "[i]n this case, Leuth has not alleged that the City or Olson acted with class-based, invidious discriminatory animus," and "[i]ndeed, Leuth has not even alleged that he is a member of a protected class," so "Leuth has failed to state a claim against Defendants under § 1985." Id. In his proposed Amended Complaint, the Plaintiff also fails to allege that he is a member of a protected class, and therefore, we deny the Plaintiff's Motion insofar as he seeks to allege a violation of §1985, against all parties.

2. The Motion to Add a Claim of Defamation. In Count Five of the proposed Amended Complaint, the Plaintiff seeks to add a claim against Olson, and the City, for defamation. The Plaintiff alleges that specific actions of these Defendants have defamed him, including: Olson's conduct in refusing to return the Plaintiff to active duty; Olson's conduct in devising the handgun requalification issue, as an otherwise facially neutral basis for inducing the City Council to terminate the Plaintiff; Olson's sudden refusal to acknowledge that the Plaintiff passed the handgun qualification test on June 15, 2000; the City Council's termination of the Plaintiff's employment under the pretext of his inability to requalify with his firearm; and Olson's continuing dissemination of knowingly false information adverse to Plaintiff's reputation as a police officer.

Both Defendants object to the addition of this claim on the ground that the Plaintiff has failed to state sufficient facts to support a defamation claim, and because the Statute of Limitations bars this claim. Olson also claims that any statements he may have made were privileged, as he holds qualified immunity from suit.

The Defendants contend that, under Minnesota law, a Plaintiff must plead, with particularity, the words which are alleged to be defamatory, and that, as the Plaintiff failed to plead with specificity the allegedly defamatory words, he has failed, as a matter of law, to state a claim of defamation. Under the laws of Minnesota, in order to prove a defamation claim the Plaintiff must show: "(1) the defendants published or communicated a statement about [him] to a third person; (2) the statement was false; and (3) the statement tended to harm her reputation and lower her in the estimation of the community." Michaelis v. CBS, Inc., 119 F.3d 697, 700 (8th Cir. 1997); see also Toney v. WCCO Television, Midwest Cable and Satellite, Inc., 85 F.3d 383, 386 (8th Cir. 1996); Cavanaugh v. Burlington Northern Railroad Co., 941 F. Supp. 872, 879 (D. Minn. 1996); Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980).

As a threshold matter, we note that, in a defamation action, "[t]he manner of setting forth allegations is a matter of procedure, not substance, and a federal court cannot be bound by a state's

technical pleading rules." Asay v. Hallmark Cards, 594 F.2d 692, 698-99 (8th Cir. 1979). However, our Circuit, in Asay, stated that the "use of In haec verba pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings." Id. at 699. Thus, defamation claims must be plead with some degree of specificity. See Cabal v. U.S. Dept. of Justice, 1992 WL 336447, **2 (8th Cir. Nov. 8, 1992)(stating that "[t]he District Court likewise properly dismissed [the plaintiff's] defamation claims because he failed to indicate specific speakers, words, times, places, or audiences; [he] attributes identical statements to all of the defendants, thereby making the charges indefensible"). Moreover, a "[c]laim of defamation must be specific enough to allow defendants to frame their defenses." Id.; see also Asay v. Hallmark Cards, supra at 699 (stating that "[t]he District Court could easily find that the requisite degree of specificity was absent * * * because [the claim] does not give any indication to whom the alleged statements were made and describes the statements in vague terms").

Here, the Plaintiff's allegations consist mainly of certain acts which, by implication, or by interpretation, may suggest that he was defamed. The only mention of any statement made is a vague allegation that Olson disseminated "knowingly false information." This claim is not sufficiently specific, however, as the Plaintiff

fails to identify the specific words, times, places, and recipients of the alleged defamatory statements. As alleged, we have no idea what knowingly false information was disseminated. Moreover, as the Defendants have both raised a Statute of Limitation defense, and Olson has raised the defense of privilege, the Plaintiff's claim is not specific enough to allow the Defendants to frame their defenses. The dates on which the alleged statements were made, which are necessary to evaluate the Defendants' Statute of Limitations defense, were not specified, nor was the context in which the statements were made, which is important in evaluating Olson's defense of privilege.[1] See, Asay v. Hallmark Cards, Inc., supra at 699 (stating that "a certain degree of specificity [is needed] in order

---

[1]"Minnesota law 'recognizes a qualified privilege which exempts an employer from liability for defamatory statements about an employee so long as the statements are made in good faith and for a legitimate purpose.'" Keenan v. Computer Associates Int'l, 13 F.3d 1266, 1269 (8th Cir. 1994), citing Brooks v. Doherty, Rumble & Butler, 481 N.W.2d 120, 124-25 (Minn. App. 1992). As the Court explained, in Cavanaugh v. Burlington Northern Railroad, 941 F. Supp. 872, 879 (D. Minn. 1996):

> The qualified privilege analysis thus involves a two-step inquiry. First, the defendant bears the burden of establishing the existence of the privilege by proving that the communication was: (1) made upon a proper occasion, (2) made from a proper purpose, and (3) based upon reasonable and probable grounds.

Plainly, the application of such a privilege requires more than the scant allegations of fact that are presented in the proposed Amended Complaint.

to evaluate the possibility of a privilege"). As such, we are unable to evaluate the merits of the Defendants' purported defenses, given the sparsity of the Plaintiff's proposed factual allegations.

Thus, we must deny the Plaintiff's Motion to Add a defamation claim, for failure to state a claim, but with the caveat that the Plaintiff will be given a second chance to amend his Complaint, on this ground, should he elect to promptly do so. See, Freeman v. Bechtel Construction Co., 87 F.3d 1029, 1032 (8th Cir. 1996) (stating that "[w]hen a defamation complaint fails to state a claim, it may be error to dismiss the complaint or strike the deficient allegations without giving plaintiffs a chance to amend").

3. Motion to Dismiss the GPD, and the intentional infliction of emotional distress claim, without prejudice.

In his Original Complaint, in addition to naming Olson and the City as Defendants, the Plaintiff also named the GPD as a Defendant and, in Count Four, he asserted a claimed intentional infliction of emotional distress. In his proposed Amended Complaint, the Plaintiff does not name the GPD as a Defendant, nor does he allege a claim of intentional infliction of emotional distress, but rather, he seeks to voluntarily dismiss the GPD, and the intentional infliction of emotional distress claim, without prejudice. As we have noted, the Plaintiff's Motion to Amend was filed before the District Court's Order of September 12, 2000, in which

the GPD, and the intentional infliction of emotional distress claim, were dismissed, with prejudice. Therefore, to the extent that the Plaintiff's Motion seeks to dismiss the GPD, and the intentional infliction of emotional distress claim, without prejudice, the Motion is denied as moot.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiffs' Motion to Amend the Complaint [Docket No. 23] is GRANTED in part, and the Plaintiff is directed to file an Amended Complaint, which conforms to the leave granted herein, and serve the same upon the Defendants in accordance with the applicable Federal Rules of Civil Procedure.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE